UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROBIN SIMPSON, ET AL,

                    **Plaintiff,**

v.                              Case No. 1:11-cv-314-HJW

KEVIN MACK,

                      **Defendant**

### ORDER

This matter is before the Court upon the defendant's "Motion for Summary Judgment" (doc. no. 21), which plaintiffs oppose. Defendant filed proposed findings of fact and conclusions of law, which plaintiffs have highlighted as true, false, or irrelevant (doc. no. 28). Having considered the record, including the pleadings, the parties' briefs, exhibits, proposed findings, and relevant authority, the Court will <u>grant</u> the defendant's motion for the following reasons:

### I. Background and Factual Allegations

After being ejected from a nightclub, Robin and Thomas Simpson filed a federal complaint on May 13, 2011, against Fairfield Police Officer Kevin Mack in his individual capacity, alleging "assault and battery" and violation of their civil rights under 42 U.S.C. § 1983. The entire factual portion of their complaint consists of the following paragraph:

> On October 23, 2010, Plaintiffs were attending a "mixed martial arts" program at the Metropolis nightclub in Fairfield, Ohio, to observe and support their son, Doug Davidson, who was fighting on the program. While plaintiffs were seated and peacefully cheering for their son, defendant approached without warning, took hold of the Plaintiffs, and dragged them from the nightclub for no

apparent reason (doc. no. 1 at ¶ 2).

Plaintiffs allege they suffered "personal injury and emotional distress" and seek "compensatory damages exceeding $75,000" as well as punitive damages (Id. at ¶ 3).[1] Despite ample time to do so, plaintiffs conducted no discovery. Defendant deposed the plaintiffs and their identified witnesses. All eight deposition transcripts have been filed in the record, as well as copies of the surveillance videotapes and an audiotape of Robin Simpson's early morning phone calls to police to complain about the incident (doc. nos. 13-20, 24, Exs. A, B). Upon the conclusion of discovery, defendant filed a motion for summary judgment. Plaintiffs responded, and defendant replied. This matter is now fully briefed and ripe for review.

## II. Issues Presented

The defendant officer asserts that the plaintiffs' three-paragraph complaint is "insufficient and fails to present a plausible claim" pursuant to Rule 12(b)(6). He also asserts that summary judgment should be granted because his "actions and use of force were objectively reasonable," no constitutional violation occurred, and he is entitled to qualified immunity. He also argues that he is entitled to immunity under Ohio R.C. § 2744.03(a)(6) on the state law claims of "assault and battery."

## III. Discussion

### A. Whether the Complaint States a Claim for Which Relief May be Granted

---

[1] Plaintiffs assert that this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 (and 1332. As to diversity, the complaint does not indicate the parties' state citizenship. Evidence reflects that the plaintiffs are Indiana residents and that the defendant is a police officer in Ohio (and thus, presumably a citizen of Ohio).

**Officer Mack first argues that the complaint fails to adequately state a claim for relief pursuant to Rule 12(b)(6). While the Court agrees that the two-sentence factual portion of the complaint is cursory, the Federal Rules of Civil Procedure provide that a motion to dismiss pursuant to Rule 12(b)(6) should be filed <u>before</u> answering. He filed his answer on July 15, 2011 (doc. no. 5). To the extent his motion may be construed as a Rule 12(c) motion, plaintiff has already filed a well-supported motion for summary judgment under Rule 56, which is dispositive. In the interest of judicial economy, this Court will consider the motion under Rule 56(c).**

**B. <u>Whether Officer Mack is Entitled to Qualified Immunity and Summary Judgment on the § 1983 Claim</u>**

**Rule 56(a) of the Federal Rules of Civil provides in relevant part that:**

> **A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).**

**Under Rule 56, the moving party bears the burden of proving that no genuine dispute of material fact exists. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (l986). The court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. <u>Id</u>. at 587. The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986). A genuine dispute exists "only when there is sufficient evidence on which the jury could reasonably**

find for the plaintiff." Id. at 252. On summary judgment review, the court's role is not to "weigh the evidence and determine the truth of the matter," but rather, to determine whether there are any genuine disputes of material fact for trial. Id. at 249.

Plaintiffs are suing Officer Mack in his individual capacity for alleged violation of § 1983 and seek to impose personal liability on him for actions taken under color of state law. Title 42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

To prevail on their 42 U.S.C. § 1983 claim, plaintiffs must show that "a person acting under color of state law deprived [them] of a right secured by the Constitution or laws of the United States." Smoak v. Hall, 460 F.3d 768, 777 (6th Cir. 2006). Plaintiffs do not identify any constitutional violation, except to vaguely refer to their "rights to individual liberty" (doc. no. 1 at ¶ 3). If a police officer restrains a person's freedom, the officer has "seized" that person. Terry v. Ohio, 392 U.S. 1, 16 (1968). Given that the plaintiffs are seeking damages for "personal injury" allegedly incurred when the police officer escorted them out of the seating area and/or club, plaintiffs appear to be alleging a claim of "unreasonable seizure" or "excessive force.

"Claims that law enforcement officers used excessive force in the course of an arrest, investigatory stop, or other "seizure" of a free citizen are analyzed under the Fourth Amendment's "reasonableness" standard. Caie v. West Bloomfield Twp.,

2012 WL 2301648, *3 (6th Cir. (Mich.)). The "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene." Graham v. Connor, 490 U.S. 386, 396-97 (1989). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Id. The court must consider the totality of the circumstances and pay "careful attention to the facts and circumstances of each particular case." Id.

Defendant asserts he is entitled to qualified immunity, which protects officers "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982)). Officer Mack in his individual capacity is entitled to qualified immunity unless (1) he violated the plaintiffs' constitutional rights; and (2) those rights were clearly established. Pearson, 555 U.S. at 232. The Court may use its discretion in deciding which prong to address first. Id. at 236.

The defendant police officer moves for summary judgment on the basis that his "actions and use of force were objectively reasonable." The evidence of record amply supports his assertion. He points to evidence, including testimony from eight depositions, the police investigation report with additional witness statements, the surveillance videotapes of the incident, and the audio recording of Robin Simpson's early morning phone calls to police. Even construing the evidence in the light most favorable to plaintiffs, the evidence shows that Officer Mack did not violate their constitutional rights and that there are no genuine disputes of material fact for trial.

Page 5 of 16

**Although plaintiffs have red-lined as "disputed" various facts in the proposed findings, they do not point to any evidence that might raise any genuine disputes of material fact. To defeat qualified immunity, plaintiffs must present evidence sufficient to create a genuine issue as to whether the defendant violated their' constitutional rights. <u>Simmonds v. Genesee Cty.</u>, --- F.3d ----, 2012 WL 2290981 (6th Cir. (Mich.)). "Once the defense of qualified immunity has been raised, it is the plaintiffs' burden to demonstrate that the defendants cannot avail themselves of it." <u>Hoover v. Walsh</u>, --- F.3d ----, 2012 WL 2122485, *4 (6th Cir. (Mich.)) (citing <u>Silberstein v. City of Dayton</u>, 440 F.3d 306, 311 (6th Cir. 2006)). Plaintiffs have not done so.**

**The Court will address the evidence of record, including the facts "disputed" by plaintiffs. On October 23, 2010, Police Officers Kevin Mack and Brad Wolfe were working a special security detail at the Metropolis Night Club in Butler County, Ohio (doc. no. 28, ¶ 1, Proposed Findings). Both police officers are patrolman with the City of Fairfield Police department, in Fairfield, Ohio, and were providing crowd control and security for the "ICE" cage-fights being held in Club Rodeo (¶ 2). Fight organizer, Kerri Schall asked them to make sure no one approached the cage and that all of the patrons in the folding chair area should remained seated (¶ 3).**

**That evening, Robin Simpson and her husband Thomas ("plaintiffs"), went to the Metropolis Nightclub to see Robin's son, Doug Davidson, participate in the MMA fights (¶ 4). They arrived at the club sometime between 9:00 and 9:30 p m. (¶ 5), and met six friends there: Kim Cooney and her husband Michael, Bridget Smith and her husband Randy, and Starla Smith and her husband Michael. Plaintiffs had seats in**

the folding chair area by the cage and waited several hours for her son's fight (¶ 6).

Although the plaintiffs "dispute" that they were drinking alcohol at the event (at ¶¶ 7-8), they both acknowledged at deposition that they had in fact been drinking alcohol at the club that evening. Robin estimated that she drank at least "three beers" while waiting for the fight to begin, and Thomas also admits he drank three beers during this time (Robin Dep. at 28; Thomas Dep. at 60). Various witnesses testified at their depositions that the Simpsons had been drinking alcohol "all night" and were "tipsy" or "buzzed" (Starla Smith Dep. at 20; Bridget Smith Dep. at 28; Michael Cooney Dep. at 19). Plaintiffs have not produced any evidence to the contrary.

Once the fight began, Robin was standing up cheering loudly for her son's fight in the folding seat area and was warned repeatedly (three times, according to Officer Mack) to stay in her seat so as not to block the view of other patrons (doc. no. 28 at ¶¶ 9-10 ). Although she "disputes" that she was standing up, at least five witnesses indicated in their depositions that she was standing up cheering (Kim Cooney Dep. at 17; Mike Cooney Dep. at 40; Mike Smith Dep. at 21; Starla Smith Dep. at 17; Randy Smith Dep. at 23). When asked at deposition if she had been standing up cheering, she admitted "I might have been" (Robin Dep. at 33). The Police Services Report (at p. 6) prepared by Sgt. Maynard after he spoke with witnesses and personally viewed the surveillance videotapes, reflects that she was standing cheering. Officer Wolf indicated he saw Robin standing and cheering loudly, and that she refused to sit down despite being instructed to do so at least three times by

Officer Mack (Id.). Plaintiffs have pointed to no evidence to the contrary. Although the summary judgment standard requires that the evidence be viewed in the light most favorable to the nonmoving party, it does not require that bald assertions and subjective unsupported allegations of the nonmoving party be adopted by a court.

Robin Simpson became abusive toward Officer Mack when he asked her for a third time to remain seated, and Officer Mack decided to escort her from the seating area (at ¶ 11). She acknowledges that she was "madder than a wet hornet" (Robin Dep. at 30). Metropolis security then escorted her outside (¶ 16). This occurred between 11:00 and 11:30 p.m. Although she "disputes" that she was "walked outside by members of Metropolis security," the Police Report indicates that the surveillance videotape confirmed this, as it was plainly visible that members of Metropolis security had walked her outside.

Upon seeing his wife being escorted from the seating area, Thomas Simpson approached and began acting belligerently toward Officer Mack and Metropolis security (doc. no. 28 at ¶ 13). When Thomas (who is 6'3" and weighs approximately 290 lbs.) went over to ask what was going on, witnesses indicate that he fell over some chairs and sprawled on the ground (¶ 14; Thomas Dep. at 25, 30; Police Services Report at 11-12, witness statements of John Bailey and John Miller). He was then escorted from the premises by Officers Mack and Wolfe (¶ 15).

Although the plaintiffs red-line as "disputed" the assertion that he "began acting belligerent [sic] towards Officer Mack and Metropolis security and fell to the ground" (doc. no. 28 at ¶ 13), plaintiffs do not dispute that Thomas "fell to the

ground when he fell over a chair" (¶ 14). To the extent plaintiffs "dispute" that Thomas acted belligerently (at ¶ 16), Officer Wolfe indicated in the police report that Thomas was "highly intoxicated and confrontational" and resisted both officers when they escorted him out of the club. Thomas acknowledged at deposition that he had been "raising hell" at the club and that "whatever is on the tape is ....correct" (Thomas Dep. at 33, 52). He admits he was not hand-cuffed at any time (Id. at 63-64). It is undisputed that he was escorted out (doc. no. 28 at ¶ 15).

Officer Mack indicates that the Simpsons remained outside the club "raising hell" for about 15 minutes before finally leaving (doc. no. 28 at ¶ 17). Although they "dispute" this characterization, Thomas acknowledged at his deposition that he and his wife remained outside for approximately 10-15 minutes (Thomas Simpson Dep. at 33). Moreover, the police report reflects that the club manager, Mike Straight, advised police that the Simpsons had remained outside "screaming, using foul language, and out of control" (doc. no. 21-4 at 4). Straight also indicated that Thomas had tried to push his way back into the club, but was refused entrance several times (Id.). Plaintiffs point to no evidence that would suggest any genuine dispute about these matters. See Anderson, 477 U.S. at 256–57 (holding that surviving summary judgment requires a plaintiff to provide evidence on which a reasonable juror could return a verdict in his favor).

Despite asking for compensatory damages for personal injury in the present complaint, both plaintiffs admit that, other than a few minor bruises, they were not injured in this incident (Thomas Dep. at 46; Robin Dep. at 52-53). Robin testified

that she was not claiming any injuries in this suit (Id.). Although plaintiffs red-line as "disputed" the assertion that they were not injured as a result of this incident (doc. no. 28 at ¶¶ 19-20), their own testimony provides otherwise. They have not pointed to any evidence suggesting any genuine disputes of material fact on this issue. At the scene, the Simpsons did not mention any injuries, and there is no evidence they sought (or needed) any medical care.

At approximately 3:30 a.m. on October 24, 2010, Robin Simpson called the police four times in her effort to lodge a complaint about the incident (doc. no. 28 at ¶ 18). In her calls to the City of Fairfield Communication Center, she was repeating herself, was insulting to the dispatcher, and sounded intoxicated (doc. no. 21, Ex. B, audio recording). She claimed she and her husband had been thrown to the ground and hand-cuffed. She repeatedly threatened to bring "a major lawsuit."

Sgt. Maynard of the Fairfield Police Department investigated the incident (doc. no. 28 at ¶ 21). He spoke with witnesses and viewed the surveillance videotapes. His report indicates that the videotapes confirmed that Robin had been standing up cheering near the cage, that both Simpsons were escorted out, that neither of them had been hand-cuffed, and that they were released outside (doc. no. 21-4 at 3-4). According to the police report, the videotape plainly showed the Simpsons "continually arguing with Metropolis staff and refusing to leave the property" (Id.). Sgt. Maynard determined that Robin's complaint was unfounded, that Officer Mack had acted within his authority, and that "it was the Simpsons' actions that made the use of force necessary" (doc. no. 28 at ¶ 22). The Fairfield Chief of Police, Michael

**Dickey sent a letter to Robin Simpson, dated December 22, 2010, advising that the evidence did not substantiate her complaint (doc. nos. 28 at ¶ 25; 21, Ex. D "Letter").**

**Although plaintiffs "dispute" that Officer Mack's use of force was reasonable, they have not pointed to any evidence suggesting that his actions in escorting them out were "unreasonable" in any way, nor have they pointed to any evidence showing the existence of any genuine disputes of material fact.  The main purpose of the summary judgment rule is "to isolate and dispose of factually unsupported claims." Celotex Corp. v. Catrett, 477 U.S. 377, 323-33 (1986). Moreover, when a party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it," the court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.  Scott v. Harris, 550 U.S. 372, 380 (2007).  Officer Mack has pointed to evidence (including surveillance videotapes) indicating that he used minimal and appropriate force to escort them out, and that contrary to what Robin Simpson claimed in her phone calls to police, he did not hand-cuff or "throw" them to the ground. Defendant correctly asserts that he did not use excessive or unreasonable force, that there was no "constitutional violation" on such basis, and that he is entitled to qualified immunity.**

**In their response, plaintiffs make no attempt to point to any evidence to support their § 1983 claim.  Instead, they contend that Officer Mack was <u>not</u> acting under "color of state law."  Defendant points out that their argument undermines their own § 1983 claim (which by definition, requires acting "under color of state law") and urges that their argument essentially waives such claim.**

**Officer Mack replies that he was in police uniform and acting in the course and scope of his duties as a police officer while working the special detail at the Metropolis night club. He explains that such special details are offered as an extension of police services to private employers within the City of Fairfield and that the City of Fairfield retains absolute control over the officer's authority while providing such services (doc. no. 26 at 2-3). In support, he attaches the affidavit of City of Fairfield Police Chief Michael Dickey, who explains that the City of Fairfield Police Department allows officers to work in uniform with city equipment for a private employer as an extension of police services (Id., Ex. E). This "extra-duty" employment, defined as outside employment where law enforcement powers are a necessary part of the job, is allowed within city limits (Id.). Police Department rules, regulations, policies, and procedures apply while an officer is working an extra-duty job. Officers Mack and Wolf were both working the event at the Metropolis to provide crowd control and security, and it is undisputed that they were in police uniform all relevant times.[2]**

**Plaintiffs acknowledge that a "police officer working a private detail has the right and duty to enforce the law" (doc. no. 25 at 2) and that Officer Mack was in police uniform. Despite their unruly and disorderly behavior, plaintiffs contend that they "committed no violation of law" and that Officer Mack was merely "enforcing**

---

[2]**Plaintiffs knew the defendant was a police officer, as Robin called the Fairfield Police Department to complain and threatened to sue the police (Robin Dep. 49, 51, 76, 80; Audio Recordings). Her husband indicated that "police officers" had escorted him out of the club (Thomas Dep. at 34).**

house rules." Plaintiffs argue that "if plaintiff was standing to cheer for her son, she was not violating any ordinance of the city of Fairfield nor any law of the state of Ohio" (doc. no. 25 at 1). Plaintiffs make the attenuated argument that "[w]here no violation of law has occurred, and no reasonable suspicion of a violation has arisen, the officer has no right to detain or use any force against a person, and any such action by the officer is an assault and battery" (Id.).

Plaintiffs' argument misses the mark. For purposes of § 1983, a person acts "under color of state law" when exercising power "possessed by virtue of state law." Briscoe v. Jackson, 285 Fed. Appx. 205, 208 (6th Cir. 2008) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). In other words, before a defendant may be held liable under § 1983, the officer must first possess power by virtue of state law, and then misuse that power in a way that violates federal constitutional rights. Cherrington v. Skeeter, 344 F.3d 631, 645 (6th Cir. 2003) (observing that if no constitutional right has been violated, there is no need for further inquiries). Here, Officer Mack possessed police authority to conduct crowd control by virtue of state law, was on special detail in uniform, and did not misuse his police authority in a way that violated any of plaintiffs' federal constitutional rights. The record, viewed most favorably to the plaintiffs, does not show that the officer's conduct violated any constitutional right of the plaintiffs. Officer Mack is entitled to qualified immunity.

**C. Whether Defendant is Entitled to Immunity From the State Law Claims of Assault and Battery Under Ohio R.C. § 2744.03(A)(6)**

With respect to the plaintiffs' state claims of assault and battery, a police

officer is immune from liability for injury unless his actions were "manifestly outside the scope" of his responsibilities as an officer, or if he acted "with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio R.C. § 2744.03(A)(6). See Cook v. Cincinnati, 103 Ohio App.3d 80, 91 (Ohio App. 1 Dist. 1995) ("the Ohio legislature has determined that a police officer, for example, cannot be held personally liable for acts committed while carrying out his or her official duties unless one of the exceptions to immunity is established"); see also, e.g., Justice v. Marion Cty. Sheriff's Dept, 202 F.3d 268, 2000 WL 32025, *4-5 (6th Cir. 2000) (same).

"Malice" is the willful and intentional design to do injury or the intention or desire to harm another through conduct which is unlawful or unjustified. Id. (citing Jackson v. Butler Cty. Bd. of Commrs. 76 Ohio App.3d 448, 453-54 (1991); Caruso v. State, 136 Ohio App.3d 616, 621 (Ohio App. 10 Dist. 2000). "Bad faith" involves a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another. Id. "Reckless" misconduct refers to "an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that such risk is greater than that necessary to make the conduct negligent." Caruso, 136 Ohio App.3d at 621 (citing Thompson v. McNeil, 53 Ohio St.3d 102, 104-105 (1990)). Plaintiff's have not pointed to any evidence in support of these exceptions.

Defendant aptly points out that the evidence plainly shows that he did not act "with malicious purpose, in bad faith, or in a wanton or reckless manner."

Defendant argues that an officer may be held liable for assault and battery only if he used "unreasonable force" (doc. no. 21 at 6). D'Agastino v. City of Warren, 75 Fed.Appx. 990, 995 (6th Cir. 2003) (citing Schweder v. Baratko, 103 Ohio App. 399, 403 (1957) ("only in cases where excessive force is used . . . can such force be claimed [to be] an assault and battery"); Chappell v. City of Cleveland, 585 F.3d 901, 916 n. 3 (6th Cir. 2009) ("as plaintiff has failed to demonstrate that defendants' conduct was objectively unreasonable [under the Fourth Amendment], it follows that she has also failed to demonstrate that defendants acted with 'malicious purpose, in bad faith, or in a wanton or reckless manner,' such as is required to avoid statutory immunity under Ohio Revised Code § 2744.03(A)(6)(b)").

Officer Mack applied only a minimal amount of force for a short period of time, i.e. only long enough to escort the plaintiffs from the club. The force used was appropriate under the circumstances. Plaintiffs were admittedly not injured. Despite their belligerent behavior and abusive language, Officer Mack used the minimal force necessary to escort them from the seating area and/or out of the Metropolis Nightclub. Although Robin reported to police that she had been thrown to the ground and hand-cuffed when escorted out, the videotape and witness testimony reflects otherwise. Officer Mack is entitled to immunity under state law on the plaintiffs' claims of assault and battery.

IV. Oral Argument Not Warranted

Local Rule 7.1(b)(2) provides that courts have discretion to grant requests for oral argument. Here, the parties have not requested oral argument. Moreover, the

**briefs and exhibits are clear on their face, and oral argument is not warranted.  See <u>Yamaha Corp. of Am. v. Stonecipher's Baldwin Pianos & Organs</u>, 975 F.2d 300, 301-02 (6th Cir. 1992) (pursuant to local rules, and absent a request for oral argument, motions for summary judgment may be decided on written briefs).**

**Accordingly, the defendant's "Motion for Summary Judgment" (doc. no. 21) is GRANTED, with costs to be born by plaintiffs.**

**This case is DISMISSED and TERMINATED on the docket of this Court.**

**IT IS SO ORDERED.**

                                                       **s/Herman J. Weber**
                                         **Herman J. Weber, Senior Judge**
                                         **United States District Court**